IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MICHAEL T. LEWIS,<br><br>    Plaintiff,<br><br>vs.<br><br>PHILIP ANSCHUTZ and XANTERRA PARKS AND RESORTS, INC.,<br><br>    Defendants. | CV 21-115-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Michael T. Lewis ("Lewis"), proceeding without counsel, brings this employment discrimination action against Defendants Xanterra Parks & Resorts, Inc. ("Xanterra") and Philip Anschutz, alleging claims for damages arising out of his employment with Xanterra.

Presently before the Court is Defendants' Motion to Compel Arbitration and Dismiss Case. (Doc. 19.) The motion is fully briefed and ripe for the Court's review.[1] (*See* Docs. 20, 25, 26.) For the following reasons, the Court recommends Defendants' motion be **GRANTED** in part and **DENIED** in part.

/ / /

/ / /

---

[1] In response to Defendants' motion, Lewis has filed a Motion Not To Compel Arbitration (Doc. 25), which the Court construes as a brief in opposition to Defendants' motion.

1

I.      BACKGROUND

Xanterra is a concessionaire for the National Park Service in Yellowstone National Park. (Doc. 20-1, ¶ 6.) To perform that function, Xanterra hires individuals on a seasonal basis to provide guest services for park visitors. (*Id.*)

Xanterra hired Lewis as a Seasonal Laundry Maintenance Technician for the 2019 and 2020 summer seasons, with the season beginning in March and ending in early November each year. (Doc. 20 at 3; *see also* Doc. 6-1 at 4, 15.) All of Lewis' duties were performed within the boundaries of Yellowstone National Park, and he resided in Xanterra employee housing in the park. (Doc. 20 at 3; *see also* Doc. 2-1 at 2.) While staying in employee housing, Xanterra issued written reprimands to Lewis for multiple alleged violations of dormitory policy. (Docs. 5 at 9; 20 at 3.) Subsequently, on October 30, 2020—before the scheduled end of the 2020 season—Xanterra terminated Lewis' employment. (Docs. 5-1 at 2; 20 at 3.)

Lewis brought this action under Title VII of the Civil Rights Act of 1964 and the Montana Wrongful Discharge from Employment Act. He alleges Defendants unlawfully discriminated against him on the basis of his race, and ultimately discharged him from his employment. (*See* Doc. 5 at 7–10.)

/ / /

/ / /

Defendants assert that Lewis signed an arbitration agreement with Xanterra that governs this dispute. Accordingly, Defendants move to compel arbitration and dismiss this action. (Doc. 19.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides a remedy in federal court to compel arbitration under written arbitration agreements. The Act provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (2018). "As federal substantive law, the FAA preempts contrary state law." *Mortensen v. Bresnan Comms., LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013).

The proper standard for review for motions to compel arbitration is the summary judgment standard of Fed. R. Civ. P. 56(a). *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). Accordingly, courts may consider evidence outside of the pleadings for purposes of deciding such motions. *Regents of Univ. of Cal. v. Japan Science & Tech. Agency*, 2014 WL 12690187, at *3 n.24 (C.D. Cal. Oct. 16, 2014) (collecting cases).

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Further, disputes over irrelevant or unnecessary facts will not preclude a party from satisfying the Rule 56 standard. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III. DISCUSSION

The FAA governs the enforceability of arbitration agreements in contracts involving interstate commerce. The Act provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

for the revocation of any contract." 9 U.S.C. § 2.  If not exempted by the Act, written arbitration agreements in employment contracts are governed by the FAA when the employment involves or affects interstate commerce.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001).

In enacting the FAA, Congress "inten[ded] to regulate to the outer limits of its authority under the Commerce Clause." *Id.* at 115.  Therefore, when determining whether employment involves or affects interstate commerce, courts should employ a broad interpretation of those terms.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995) (stating that, in the context of the FAA, "the word 'involving,' like 'affecting,' signals an intent to exercise Congress' commerce power to the full").  Consistent with its broad application, courts have applied the FAA to arbitration agreements in employment contracts that are similar to Lewis' employment with Xanterra.  *See, e.g.*, *Ramirez v. LQ Mgmt., L.L.C.*, 2020 WL 2797285, at *2 n.3 (C.D. Cal. May 29, 2020) (recognizing employment contract affected interstate commerce because plaintiff was employed in housekeeping at the La Quinta Inn and Suites at LAX and the operation of even local hotels involves interstate commerce) (citing *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 258 (1964)); *Burries v. Sea Island Co.*, 2020 WL 3237595, at *3 (S.D. Ga. June 15, 2020) (finding plaintiff's employment at a resort affected interstate commerce given that a core focus of employer's business was

attracting and welcoming residents of other states); *McCloud v. Amusement USA, LLC*, 2019 WL 642755, at *1 n.1 (N.D. Fla. Feb. 6, 2019) (employment that generates revenue from tourists at a company that solicits out-of-state business is also one that "involves" and "affect[s] interstate commerce." *See also Long v. Xanterra Parks & Resorts, Inc.*, 2021 WL 7209533, at *2 (D. Wyo. Apr. 28, 2021) (applying FAA to arbitration agreement signed by former Xanterra employee working within Yellowstone National Park).

Similar to the foregoing cases, Lewis' former employer, Xanterra, provides guest services for tourists who travel to Yellowstone Park from every state in the country. Given the plain language of 9 U.S.C. § 2, and the Supreme Court's broad interpretation of that language, the Court has little difficulty finding Lewis' employment with Xanterra involved or affected interstate commerce, and that his employment contract falls within the scope of the FAA.

### A.     Whether the Court Should Compel Arbitration

When considering whether to compel arbitration, courts are "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If these two requirements are met, judicial proceedings must be stayed "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Defendants argue that Lewis voluntarily agreed to arbitrate all legal claims arising out of or in connection with his employment with Xanterra. (Doc. 20 at 6.) In support of this assertion, Defendants have produced an "Arbitration Agreement (Yellowstone National Park)" which appears to bear Lewis' signature, dated March 3, 2020. (Doc. 20-1 at 8.) In response, Lewis argues that the aforementioned Arbitration Agreement is a "forgery" and the signature on the Agreement is not his. (Doc. 25 at 1.)

Gateway questions regarding arbitrability, such as the validity and scope of an arbitration agreement, are typically decided by the court. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 77–78 (2010); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). Although these issues can be delegated to an arbitrator, "the question of arbitrability is left to the court unless the parties clearly and unmistakably provide otherwise." *Momot*, 652 F.3d at 988. Here, because the Agreement does not clearly or unmistakably provide otherwise (*see* Doc. 20-1 at 8), the Court will determine the validity of the Arbitration Agreement.

> 1. **Whether the Parties Entered into an Agreement to Arbitrate**

The FAA declares a national policy favoring arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Southland Corp. v. Keating*, 465 U.S. 1, 2 (1984). Because arbitration is favored, the party challenging the

arbitration agreement "bear[s] the burden of proving that the provision is unenforceable." *Mortensen*, 722 F.3d at 1157 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

As stated above, Lewis argues that the Arbitration Agreement is a "forgery" and the signature on the Agreement is not his. (Doc. 25 at 1.) Lewis also asserts that he was not employed on the date the Agreement was signed by a general manager for Xanterra. (*Id.*)

In opposing arbitration on those grounds, Lewis relies on *Flemming v. Montgomery*, 2008 WL 2783281 (N.D. Miss. July 15, 2008). As in this case, the plaintiff in *Flemming* alleged she never signed the arbitration agreement and that her signature had been forged. *Id.* at *1. In support, the plaintiff submitted an affidavit that the signature on the arbitration agreement did not look like her signature, and she was certain that she never signed an arbitration agreement. *Id.* Citing Fifth Circuit precedent and the FAA, the district court determined the plaintiff was entitled to a separate trial to determine the issue of forgery. *Id.* at *2.

Other courts have also found that allegations of forgery of an arbitration agreement creates an issue of fact if properly supported by an affidavit or other credible evidence. In *Brooks v. Robert Larson Auto. Group, Inc.*, 2009 WL 2853452 (W.D. Wash Sept. 1, 2009), for example, the plaintiff "signed a declaration, under penalty of perjury, stating that she did not sign the arbitration

8

agreement, that it [did] not contain her signature, and that she believe[d] her purported signature is fraudulent and her initials fabricated." *Id*. at *4. The court found her denial to be "colorable," and placed the validity of the arbitration agreement "in issue," to be decided at trial. *Id*.; *see* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").

Similarly, in *GGNSC Louisville Hillcreek, LLC, v. Dockery*, 2016 WL 5478010 (W.D. Ky. Sept. 27, 2016), the plaintiff contested the validity of an arbitration agreement and alleged that it was a forgery. *Id*. at *3. To support the claim, the plaintiffs submitted the opinion of a forensic document examiner that the initials on the arbitration agreement were not made by the individual who was alleged to have entered into the agreement. *Id*. Based on the evidence submitted, the court found it could not determine whether the agreement had been forged, and ordered an evidentiary hearing on the issue. *Id*.

In contrast to these cases, however, other courts have found that baseless, unsupported allegations of forgery are not sufficient to defeat a motion to compel arbitration. In *McCumbeee v. M Pizza, Inc.*, 2023 WL 2725991 (N.D. W. Va. Mar. 30, 2023), for example, the plaintiff alleged that his signature had been placed on the arbitration agreement through fraud or forgery, yet provided no supporting documentation or other supporting evidence. In the face of substantial evidence

9

from the defendant to rebut the allegations of fraud, the court found that the plaintiff offered "only baseless, and at times inconsistent, allegations." *Id*. at *7. Accordingly, the court found that "[d]espite making serious assertions of fraud and forgery, the Plaintiff provides no tangible evidence to support his assertions. Thus, the Plaintiff's assertions are merely that—assertions. The uncorroborated, self-serving testimony of a plaintiff is not sufficient to create a material dispute of fact sufficient to defeat summary judgment." *Id*. (citation and internal quotation marks omitted). *See also Regan v. Medieval Knights, LLC*, 2019 WL 6332164, at *2 (C.D. Cal. August 19, 2019) (evidence to support allegation that the plaintiff's signature on an arbitration agreement was forged was "severely lacking"); *Banuelos v. Alorica, Inc.*, 2020 WL 4060781, at *4–5 (W.D. Tex. July 20, 2020) (without corroborating evidence, disavowal of signature on an arbitration agreement is not sufficient to create issue of fact).

    The present case plainly falls into the second category of cases. Lewis presents only the bare assertion that his signature on the Arbitration Agreement is a forgery. He has not presented an affidavit to support the assertion, nor has he presented any other evidence that would tend to support his claim. In short, there is nothing in the record to support the claim that Lewis' signature was procured by fraud or forgery.

/ / /

Conversely, there is significant evidence in the record to show that Lewis previously acknowledged the existence of the Arbitration Agreement, and sought to enforce its terms. In his initial complaint filed with the Court, for example, Lewis represented that "I have an Arbitration agreement with the company which they refuse to respect." (Doc. 2 at 5.) Because Lewis later amended his complaint, the Court does not construe this statement as a judicial admission. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). But Lewis also attached a copy of the Arbitration Agreement to his amended complaint. (Doc. 5-1 at 17.) Although the copy Lewis submitted to the Court did not include his signature—in contrast to Defendants' copy—the form and language are identical to the Agreement produced by Defendants. (*Compare* Doc. 5-1 at 17, *with* Doc. 20-1 at 8.)

Defendants have also filed declarations of Robin Green, Xanterra's Director for Employee Relations and Compliance. (Docs. 20-1, 26-1.) In her declaration, Ms. Green states that "[a]fter Lewis' termination from employment with Xanterra, he contacted Xanterra" and "inquired about his Arbitration Agreement and initiating arbitration." (Doc. 26-1 at 2.) Green also stated in her second declaration:

> At no point during any of my communications with Lewis did he contend that he had not entered into the Arbitration Agreement or that his signature on the Arbitration Agreement had been forged. In fact, he consistently referenced the Arbitration Agreement and his desire to

11

arbitrate his employment dispute. Lewis' actions were consistent with someone who recognized that arbitration was the proper forum for his employment related claims to be resolved.

(*Id.* at 3.) Several email communications between Ms. Green and Lewis are also attached to her declaration. In those communications, Lewis wrote, "I totally disagree with the statements you collected and want arbitration according to our arbitration agreement[.]" (*Id.* at 9.) In another email, Lewis stated, "It is obvious to me that my complaints are not being taken seriously and at this point would like to proceed with arbitration." (*Id.* at 5.)

Therefore, there is substantial evidence in the record that Lewis previously acknowledged the existence of the Arbitration Agreement; he did not previously contest the validity of the Agreement or allege that his signature had been procured by fraud or forgery; and he sought to enforce the terms of the Arbitration Agreement.

As a final argument in opposition to Defendants' motion, Lewis notes that on "the date signed by the unknown General Manager 0, Plaintiff was not even employed and never been employed with Xanterra up to that point." (Doc. 25 at 1.) Lewis refers to the February 18, 2019 date below the signature of Xanterra's representative, whose name is not printed but whose title is listed as "General Manager." (Doc. 20-1 at 8.) Lewis appears to raise this point to support his assertion that his own signature was forged. But Lewis neglects to articulate the

significance of the date to the issue of forgery, and consequentially, the Court fails to see the implication.

Lewis may also be raising this point to argue that Xanterra's representative signed the Agreement before the employment relationship began—suggesting, perhaps, that Xanterra's representative signed all arbitration forms in advance or photocopied the General Manager's signature onto the Agreement. To the extent Lewis argues the misalignment of dates indicates there was no authentic agreement between the parties, this fact does not preclude the existence of a valid contract. Even if Xanterra had not signed the Agreement at all—which is not the case here—this would not have precluded its enforcement; Xanterra clearly intended to be bound by its terms. *See Rojas v. Lewis Brisbois Bisgaard & Smith LLP*, 2014 WL 3612568, at *4 (D. Nev. July 18, 2014) ("An arbitration agreement bearing only an employee's signature is valid and enforceable even if it is unsigned by the employer."); *Franks v. Guckenheimer Enterprises, Inc.*, 2019 WL 5864118, at *1 (E.D. Mo. Nov. 8, 2019) ("[T]he absence of Guckenheimer's signature at the bottom of the Arbitration Agreement is not conclusive evidence the company did not intend to be bound by the contract.").

Based on the record before the Court, even if all justifiable inferences are drawn in Lewis' favor, there is simply no evidence that his signature was forged.

Given the absence of any evidence supporting Lewis' forgery allegations, the Court finds that neither a trial nor an evidentiary hearing is warranted.

Therefore, the Court finds that the parties entered into a valid agreement to arbitrate. (Doc. 20-1 at 8.)

## 2. Whether the Arbitration Agreement Applies to this Dispute

The Court must next address whether Lewis' claims fall within the scope of the Arbitration Agreement. *Chiron Corp.*, 207 F.3d at 1130. The Agreement states in relevant part:

> In consideration of the Company employing the employee, the employee and the Company agree that any legal or equitable claims arising out of or in connection with the employment, the terms and conditions of employment, or the termination of employment will be settled by binding arbitration, except where prohibited by law. This [Agreement] covers but is not limited to the following allegations and claims for relief: wrongful discharge under statutory law or common law; employment discrimination based on federal, state or local statute, ordinance or regulation; retaliatory discharge; compensation disputes; tortious conduct; contractual violations . . . ; ERISA violations; and other statutory common law claims and disputes . . . .

(Doc. 20-1 at 8.)

Lewis brings his Complaint for Employment Discrimination under both Title VII of the Civil Rights Act of 1964 and Montana's Wrongful Discharge from Employment Act, alleging Defendants unlawfully discriminated against him on the basis of his race, specifically alleging that Defendants (1) failed to hire him, (2) failed to promote him, (3) had unequal terms and conditions of his employment,

(4) retaliated against him, and (5) terminated his employment. (Doc. 5 at 1, 3–4.) Lewis seeks an award of damages in excess of $5 billion. (*Id.* at 10.) This dispute, therefore, constitutes legal claims "arising out of or in connection with the employment, the terms and conditions of employment, or the termination of employment," and Lewis' allegations are at least covered by "employment discrimination based on federal[ and] state . . . statute" and likely other causes of action enumerated in the Agreement, which by its terms is not exhaustive. (*See* Doc. 20-1 at 8.) Thus, the Agreement is clearly broad enough to reach Lewis' claims.

In addition to his assertion that his signature was forged on the Arbitration Agreement, Lewis also argues that "Xanterra should and would have to produce several valid arbitration agreements" because Lewis was a seasonal employee. (Doc. 25 at 1.) Although it is unclear what issue Lewis intends to raise, he may be arguing that the Arbitration Agreement should not be read to apply retroactively to claims arising out of events that occurred prior to its execution on March 3, 2020.

First, while some underlying facts are alleged to have occurred during the 2019 season, it appears all of the claims alleged in Lewis' complaint accrued during the 2020 season. (*See* Doc. 5 at 4, § III.A.) Therefore, the claims accrued after Lewis' execution of the Agreement.

/ / /

Second, in the absence of temporal limitations, several courts have applied arbitration agreements retroactively to claims that accrue prior to the execution of the agreement. *See, e.g.*, *Cornelius v. Alpha Kappa Lambda*, 502 P.3d 910, 919 n.8 (Wash. Ct. App. 2021) (collecting cases). When an arbitration agreement applies broadly to "*any* dispute between the parties," the agreement is "plainly not limited to prospective disputes." *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) (emphasis in original); *see also Allbaugh v. Perma-Bound*, 2009 WL 10676437, at *1, 9 (W.D. Wash. Aug. 14, 2009) (stating that, by signing the arbitration agreement, "Plaintiff agreed to be bound to arbitrate any claims that relate to her economic relationship with Defendant, regardless of when the underlying events occurred").

In some cases, however, courts have found that the choice of the word "arise," rather than the past tense "arose" or "have arisen" in arbitration agreements can suggest that the clauses govern present or future conduct only—not past conduct. *See, e.g.*, *Castro v. ABM Industries, Inc.*, 2018 WL 2197527, at *9 (N.D. Cal. May 14, 2018) (collecting cases). The court in *Castro* pointed out that cases that have applied arbitration agreements retroactively involved clauses that use the words "arise" or "arising" to describe the *substance* of covered claims, not the *timing* of the claims. *Id.* For example, an agreement to arbitrate "[a]ny dispute or claim arising out of or relating to the engagement letter between the parties,"

16

was found to be "extremely broad" and applied to claims that predated the arbitration agreement. *In re Verisign, Inc., Derivative Litigation*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007). Similarly, an agreement to arbitrate "[a]ny claim or controversy arising out of or relating to this Agreement," was found not to include any temporal limitations and applied retroactively. *Trujillo v. Gomez*, 2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015). In contrast, when an agreement stated that arbitration is "the sole and exclusive method of resolving all Covered Claims, *whenever they arise*," the court found that this language "point[ed] to the timing of covered claims rather than the subject-matter." *Castro*, 2018 WL 2197527 at *10 (emphasis added).

Here, although Lewis signed the Agreement on March 3, 2020, its language is sufficiently broad to encompass any claims arising out of both the prior 2019 season and the upcoming 2020 season. The parties agreed to arbitrate "any legal or equitable claims arising out of or in connection with the employment, the terms and conditions of employment, or the termination of employment." (Doc. 20-1 at 8.) Thus, the word "arising" is not used as a temporal limitation; it describes the substance of covered claims.

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). Given the broad language of the

Arbitration Agreement, and the federal policy favoring arbitration, the Agreement should be applied retroactively. Therefore, to the extent any of Lewis' alleged claims accrued in his 2019 season of employment, the Court finds the Agreement applies to both his 2019 and 2020 terms of employment.

In conclusion, the Court finds (1) that a valid agreement to arbitrate exists, and (2) the Arbitration Agreement encompasses the dispute at issue. This action should, therefore, be stayed or dismissed pending arbitration in accordance with the terms of the agreement.

### B. Whether Stay or Dismissal Is Appropriate

The FAA provides that courts shall stay actions pending arbitration. 9 U.S.C. § 3. Despite the mandatory nature of the language in § 3, the Ninth Circuit has held that courts have discretion to dismiss an action if all the plaintiff's claims are subject to arbitration. *Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (stating the FAA "gives a court authority, upon application by one of the parties, to grant a stay pending arbitration, but does not preclude summary judgment when all claims are barred by an arbitration clause"). While the Ninth Circuit has recognized the discretion to dismiss actions, a court is not obligated to do so.

Here, Defendants move the Court to dismiss the case. (Doc. 19.) Lewis has not requested a stay in the event the Court were to grant Defendants' motion to

compel arbitration.  Consistent with the language of the statute, however, the more prudent course would be to stay this action pending arbitration.  If all claims and issues are ultimately resolved through arbitration, the parties may move to dismiss this action upon completion of the arbitration process.

### IV.    CONCLUSION

Based on the foregoing, IT IS RECOMMENDED as follows:

1. Defendants' motion to compel arbitration (Doc. 19) should be GRANTED;

2. Defendants' request to dismiss the case should be DENIED;

3. Defendants' alternative request to stay this action pending arbitration should be GRANTED;

4. Lewis' "Motion Not To Compel Arbitration" (Doc. 25) should be DENIED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies

/ / /

/ / /

/ / /

served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED.**

DATED this 22nd day of November, 2023.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge